George Bruce v. Commissioner.
Bruce v. Commissioner
Docket No. 47928.
United States Tax Court
T.C. Memo 1956-96; 1956 Tax Ct. Memo LEXIS 198; 15 T.C.M. (CCH) 499; T.C.M. (RIA) 56096; April 27, 1956
Clinton F. Seccombe, Esq., for the petitioner. George E. Constable, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion Respondent determined a deficiency in petitioner's income tax for 1949 in the amount of $11,926.07. The questions presented are (1) whether the respondent erred in determining that petitioner was not entitled to deduct certain expenditures made in the taxable year 1949 in connection with his boat *199 the "Thunderer"; (2) whether petitioner sustained a deductible loss on the sale of his boat in the taxable year 1949; and (3) alternatively, whether petitioner sustained a casualty loss in 1949 in the amount of $10,791.55. Findings of Fact The stipulated facts are found accordingly. Petitioner is a resident of Los Angeles, California, and filed his individual income tax return for 1949 with the collector of internal revenue for the sixth district of California. During the taxable year 1949 and for several years prior thereto petitioner was engaged as an author and writer of screenplays. In April 1947 petitioner purchased a boat from Frank Muller for $17,500, of which $2,500 was later refunded to petitioner. The boat, which petitioner renamed the "Thunderer", had originally been constructed for the United States Government as an emergency rescue vessel at an approximate cost of $285,000. It was 86 feet in length with a 22 foot beam and drew 5 1/2 feet of water. The boat was powered by two aircraft engines of 1,750 horsepower each, consuming a total of 105 gallons of 100 octane gasoline per hour when operated. In addition, the boat was equipped with four gasoline-powered generators *200 using 80 octane fuel. It required a two-man crew specialized in the operation and maintenance of aircraft engines. Petitioner registered the "Thunderer" as a pleasure vessel of the United States, which registry permitted chartering of the boat but forbade the carrying of passengers from point to point for hire. One "bare boat" charter was made to petitioner's Hollywood agent, Victor Orsatti, from August 22 to September 1, 1947, for the sum of $1,500, petitioner supplying the fuel and crew. Petitioner reported the $1,500 as income from the operation of his boat on his 1947 income tax return. In November 1947 petitioner's contract with Warner Brothers Studios was terminated and in December of that year petitioner took his boat to Ensenada, Mexico. In January 1948 petitioner took his boat to Acapulco, Mexico, to seek charters with hotels catering to tourists desiring to make fast scenic trips along the coastline. In April 1948 petitioner returned to Los Angeles, California, leaving the boat anchored, without crew, in the harbor of Acapulco because of the lack of supply of high octane aviation fuel required for the boat. In July 1948 petitioner was notified by Mexican authorities *201 that the "Thunderer" had loosened its moorings and was considered to be abandoned and a menace to navigation in the port of Acapulco. Petitioner was advised that he would be held financially responsible for any damage caused by his boat. On February 15, 1949, petitioner drove to Acapulco, Mexico. He was accompanied on the trip by Luz Grant and her two children. Petitioner then placed the "Thunderer" in dry dock for repairs for damages sustained in 1948 while the boat remained at anchor in the harbor. After petitioner's boat was returned to the water in April 1949, petitioner, in order to conserve living expenses, lived aboard it with a two-man crew until the return of the boat to the United States in June 1949. In June 1949 petitioner returned with his boat and crew to the United States. In August 1949 petitioner's boat was seized by the United States for satisfaction of certain outstanding tax liens against petitioner and was subsequently sold at public auction for the sum of $4,200 in November 1949. The log of the "Thunderer" was transferred with the boat at the time of its sale and was not available at the time of trial. Petitioner never claimed depreciation on his boat. *202 On his income tax return for 1949 petitioner claimed as business expenses the amounts of $4,350 for wages to the crew, $3,825.85 for maintenance of his boat, and $10,791.55 for repairs. He also claimed a loss on the sale of his boat in the amount of $35,800, representing the difference between a claimed basis of $40,000 and the sum of $4,200, for which the boat was sold in 1949. Respondent disallowed the amounts claimed as business deductions with respect to the boat and the amount claimed as loss on its sale in 1949. The useful life of petitioner's boat was ten years for purposes of depreciation. During the taxable year 1949 petitioner was engaged in the trade or business of chartering his boat. During the taxable year 1949 petitioner expended the amounts of $4,350 for wages to his crew, $3,825.85 for maintenance of his boat, and $8,791.55 for repairs, which amounts constitute ordinary and necessary business expenses. Petitioner sustained an ordinary loss on the sale of his boat in the taxable year 1949. Opinion LEMIRE, Judge: In the taxable year 1949 respondent disallowed amounts claimed by petitioner as business expenses in connection with a boat owned by petitioner *203 and also an alleged loss resulting from its sale. The respondent contends that the boat was acquired and maintained for petitioner's personal pleasure and recreation. It is petitioner's position that the boat was acquired in a bargain purchase with the primary intent and purpose of altering it for business purposes by renting it for charter parties. The record shows that the boat was not primarily acquired or maintained for petitioner's personal use or pleasure. Petitioner testified that at the time he purchased the "Thunderer"in April 1947 it was his sole intent and purpose to convert it for charter use and that he took it to Mexico for the purpose of seeking profitable charters but was unable to do so because of the lack of high octane fuel. Such testimony is uncontradicted. The record shows that petitioner paid $15,000 for a boat which originally cost $285,000; that he chartered the boat in 1947 and reported the amount received on his income tax return for that year; that he expended a considerable amount in the taxable year to fully convert his boat for charter use; and finally, that he was unable to so use it because of its seizure and sale for satisfaction of certain outstanding *204 tax liens against him. On this record, we have found as an ultimate fact that for the taxable year 1949 petitioner was engaged in the trade or business of chartering his boat. Respondent has stipulated that if it is found that for the taxable year 1949 petitioner was engaged in the trade or business of chartering his boat, the amounts of $4,350 expended for wages of petitioner's crew and $3,825.85 for maintenance of his boat are deductible business expenses under section 23(a)(1) of the Code. There is no dispute that in 1949 petitioner expended the further sum of $10,791.55 in connection with reconditioning his boat to return it to California. Respondent contends that some portion of that amount was expended for the board and lodging of Luz Grant and her two children at Acapulco while the boat was undergoing repair. The portion so expended is personal in nature and nondeductible. The record is not clear, however, as to the amount expended on behalf of Luz Grant and her children, but we think that $2,000 is a reasonable amount to be allocated for such personal expense. . Therefore, only the balance, or $8,791.55, constitutes an *205 ordinary and necessary business expense. There remains for determination the amount of loss which the petitioner is entitled to deduct as the result of the disposition of the boat in 1949. While the boat was in dry dock in California it was seized under a lien for delinquent taxes and sold at public auction for the amount of $4,200. On his income tax return for 1949 petitioner claimed a loss on the sale of his boat in the amount of $35,800, representing the difference between a claimed basis of $40,000 and the sum of $4,200 for which the boat was sold in 1949. On brief petitioner contends that he sustained a loss on the sale of his boat in the amount of $46,250.91, computed as follows: Original cost of boat in 1947
$17,500.00
1947 capital expenditures
14,159.36
1948 capital expenditures
8,000.00
1949 capital expenditures
10,791.55
$50,450.91
Less: Selling price
4,200.00
Loss
$46,250.91
It is not disputed that petitioner's original cost of his boat was $15,000. Petitioner, on this record, has failed to introduce any evidence in support of the capital expenditures alleged to have been made in 1947 and 1948. Accordingly, the claimed expenditures of $14,159.36 *206 and $8,000, respectively, are not to be added to petitioner's original cost basis. The 1949 capital expenditure of $10,791.55, which was originally claimed as a business expense, has been allowed to the extent of $8,791.55 as a business expense and is not to be considered in determining petitioner's adjusted cost basis. The petitioner has never claimed depreciation on his boat. Nevertheless, the depreciation allowable must be deducted from the base. . We have found as a fact that the useful life of the boat is ten years. The amount of allowable depreciation will be determined in a recomputation. The loss sustained by petitioner in 1949 is the difference between the $4,200 received on the sale of the boat and the adjusted cost basis determined in accordance herewith. Such loss, having been incurred in carrying on the petitioner's trade, is deductible in full under section 23(e)(1). The determination herein made renders is [it] unnecessary to pass on petitioner's alternative claim for a casualty loss. Decision will be entered under Rule 50.